**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FLORETTE MATTIX,                    :
           :
   Plaintiff,                    :
           :
v.                                                 :  CIVIL ACTION NO.
           :  1:13-CV-2501-RWS
DEKALB COUNTY SCHOOL        :
DISTRICT, CYNTHIA                   :
JACKSON, SHERRON                   :
LEDBETTER, BEN SMITH,          :
KAREN BRIGGS, and JUDITH      :
ROBINSON,                                 :
           :
   Defendants.                  :

## ORDER

This case comes before the Court on Defendants' Motion to Dismiss for

Failure to State a Claim [17] and Plaintiff's Motion for Leave to File Amended

Complaint [22]. After reviewing the record, the Court enters the following

Order.

### Background

This case arises out of Plaintiff's termination from her employment with

the DeKalb County School District ("District") in May 2010. Plaintiff worked

for the District as a Special Education teacher from 1996 until 2010, and the

events leading to Plaintiff's termination took place between October 2008 and May 2010 at Chamblee Middle School. (<u>See</u> Am. Compl., Dkt. [22-1].)

Plaintiff first filed suit against the DeKalb County Board of Education on June 17, 2011, but the Court granted her motion to voluntarily dismiss without prejudice on May 24, 2013. Plaintiff re-filed her Complaint [3] on September 10, 2013. Defendants filed a Motion to Dismiss [17] on December 16, 2013 and Plaintiff subsequently filed the present Motion for Leave to File Amended Complaint [22] on May 13, 2014. In her original Complaint [3], Plaintiff brought claims under 42 U.S.C. § 1983 related to First Amendment retaliation; 42 U.S.C. § 1985 for conspiracy to interfere with her civil rights; and Title VII of the Civil Rights Act of 1964 for age discrimination. Plaintiff has withdrawn her § 1985 and Title VII claims in her proposed Amended Complaint [22] and has added claims under the Americans with Disabilities Act of 1990 ("ADA") as well as the Rehabilitation Act of 1973 ("Rehabilitation Act"). Plaintiff has also alleged additional factual content with respect to her First Amendment retaliation allegations.

Plaintiff has set forth a lengthy timeline documenting what she alleges was a "hostile work environment" culminating in her retaliatory termination

based on her exercise of free speech. In particular, Plaintiff cites the following speech as a basis for her First Amendment claim: her complaints to school officials about the reassignment of a paraprofessional from her classroom to the assistant principal ([22-1] at 10); her statements to the principal regarding "hostile" conduct of another teacher toward Plaintiff (id. at 15); her grades being disregarded by the administration (id. at 22); complaints regarding her assignment to a subject area outside of her teaching specialty (id. at 25); and her speaking out about diminished instructional time for her special education students and the assignment of students without disabilities to her special education classroom (id. at 26-27).

Also included is Plaintiff's documentation of several performance evaluations scheduled during the 2009-2010 academic year in which Plaintiff was given unsatisfactory ratings. Plaintiff alleges that she was charged with several infractions either without notice or in an inconsistent manner from other teachers and that "the requirement of written notification [and] documentation [of her infractions] . . . [was] not adhered to by the defendants as required by" Georgia's Quality Basic Education Act, O.C.G.A. § 20-2-210. ([22] at 15); see also, ([22]-1 at 49, 80 n.144.) These allegations form the basis of Plaintiff's

3

14th Amendment Due Process claims in which she alleges her termination hearing was defective because she was given inadequate notice of her infractions, and the decision not to renew her contract was based on erroneous evidence presented before the local school board.

The Court first addresses the Motion for Leave to Amend [22], and finding that leave is not to be granted, will address Defendants' Motion to Dismiss [17] as it relates to the original Complaint [3].

## Discussion

### I.      Motion for Leave to Amend

#### A.      Legal Standard

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f).  Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend.  Rule 15(a)(2) directs the Court, however, to "freely give leave when justice so requires."  Despite this instruction, however, leave to amend is "by no means automatic."  Layfield v.

4

Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979).  The trial court

has "extensive discretion" in deciding whether to grant leave to amend.

Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999).  A trial court

may choose not to allow a party to amend "when the amendment would

prejudice the defendant, follows undue delays or is futile."  Id.  A claim is futile

if it cannot withstand a motion to dismiss.  Fla. Power & Light Co. v. Allis

Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir.1996); see Burger King Corp. v.

Weaver, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way of saying

"inadequacy as a matter of law").  That is, leave to amend will be denied  "if a

proposed amendment fails to correct the deficiencies in the original complaint

or otherwise fails to state a claim."  Mizzaro v. Home Depot, Inc., 544 F.3d

1230, 1255 (11th Cir. 2008).

In their Response, Defendants oppose Plaintiff's Motion for Leave to File

Amended Complaint [22] on the grounds of futility and undue delay. ([26] at 3.)

B.      Analysis

I.      *First Amendment Retaliation Claim (Count One)*

To state a claim for retaliation in violation of the First Amendment,

Plaintiff, as a public employee, must show that her speech was constitutionally

5

protected and that the speech was a substantial or motivating factor in

Defendants' decision to terminate her. Villa v. Padron, 484 F.3d 1334, 1339

(11th Cir. 2007) (citations omitted). Whether Plaintiff has made this showing is

governed by the four-part Pickering[1] analysis, under which the Court must find

that (1) Plaintiff's speech involved a matter of public concern; (2) Plaintiff's

interest in speaking outweighed the government's legitimate interest in efficient

public service; and (3) the speech played a substantial part in the government's

challenged employment decision.  Cook v. Gwinnett Cnty. Sch. Dist., 414 F.3d

1313, 1318 (11th Cir. 2005) (citing Bryson v. Waycross, 888 F.2d 1562, 1565-

66 (11th Cir. 1989)).  If the employee can make the above showing, the burden

shifts to the government to show that (4) it would have made the same

employment decision even in the absence of the protected speech.  Id.  The first

two prongs of this test are questions of law while the latter two are questions of

fact.  Id.  In light of the Court's conclusions presented below, only the first

prong of this test will be considered.

The government as employer has a stronger interest in regulating the

---

[1] Pickering v. Bd. of Educ., 391 U.S. 563 (1968).

speech of its employees than in regulating the speech of the citizenry in general.
Connick v. Myers, 461 U.S. 138, 140 (1983).  Nonetheless, it is well-settled
that "[a] public employee does not relinquish First Amendment rights to
comment on matters of public interest by virtue of government employment."
Id.  Accordingly, the First Amendment protects government employee speech if
the employee speaks "as a citizen upon matters of public concern."  Id. at 147.
If, on the other hand, the employee speaks "as an employee upon matters only
of personal interest," the speech is not entitled to constitutional protection.  Id.
As part of this analysis, the Court must decide both (1) if Plaintiff spoke as a
citizen, and (2) whether her speech was a matter of public concern.  See Boyce
v. Andrew, 510 F.3d 1333, 1342 (11th Cir. 2007).

For the first inquiry, a court must examine "whether a government
employee's speech relates to his or her job as opposed to an issue of public
concern."  Id. at 1343. When "public employees speak as an employee on
matters of personal interest . . . the First Amendment is not implicated." Villa,
484 F.3d at 1339 (internal quotations and citations omitted). Further, a public
employee "may not transform a personal grievance into a matter of public
concern by invoking a supposed popular interest in the way public institutions

7

are run." <u>Boyce</u>, 510 F.3d at 1344.

The 'controlling factor' in this analysis is whether the expressions are made pursuant to the employee's official duties.  <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 421 (2006). The Eleventh Circuit, citing <u>Garcetti</u>, has stated that the two relevant factors (though not on their own dispositive) are: "whether the speech occurs in the workplace; and second whether the speech concerns the subject matter of the employee's job." <u>Abdur-Rahman v. Walker</u>, 567 F.3d 1278, 1283 (11th Cir. 2009).

Here, Plaintiff alleges that her speech relating to "fraud in the delivery of services to [the] special education department, failure to protect special educations [sic] students from abuse/bullying . . . [and ,] inaccurate grades and [standardized test] scores . . . fall within the scope of public concern regarding public education." (Pl.'s Mem., Dkt. [22] at 9.) Plaintiff concedes that all such speech was directed only at her supervisors. (Am. Compl., Dkt. [22-1] ¶ 168.) Plaintiff also notes that the main question before the Court is whether her statements regarding the issues above were made pursuant to her official duties. ([22] at 9.)

In attempting to distinguish her speech from her official duties, Plaintiff

8

has provided the Court with a pertinent section from the Georgia Teacher

Duties and Responsibilities Instrument ("GTDRI").[2] ([22] at 10-11 n.1.)

Plaintiff argues that her statements were not made pursuant to her official duties

because the speech related to the "administrat[ion of] the educational program

of Chamblee Middle School" and she, as a teacher, had no duty as an

administrator in this regard. ([22] at 10-11.) However, formal job descriptions

do not control the inquiry regarding speech owing its existence to an

employee's official duties "because they may bear little resemblance to the

duties an employee is actually expected to perform." Abdur-Rahman, 567 F.3d

at 1283. Courts have also "consistently discredited narrow, rigid descriptions of

official duties urged upon [them]" to support the inference that the public

employee spoke as a private citizen. Id. at 1284.  Instead, the Court looks to the

content, form, and context of a given statement and gives particular

consideration to whether the speech occurs in the workplace and whether it

concerns the subject matter of the employee's job. Id. at 1282-83.

        Defendants argue that all of Plaintiff's statements constitute work related

---

[2] Plaintiff has not explained how much deference the Court should give to the
GTDRI's governance of teacher conduct.

9

complaints that owe their existence to Plaintiff's professional responsibilities.

The Court agrees. Plaintiff's statements concern matters such as not having an

extra teacher or paraprofessional in her classroom, the lack of time provided for

teaching her students, untimely receipt of lesson plans, and not being assigned

to her subject area of expertise. ([22-1] ¶¶ 24-26, 67-71.)  With the exception of

a communication to a parent regarding bullying in the school, Plaintiff made all

her complaints to her direct supervisors concerning the subject matter of her

job. And despite the narrow distinction Plaintiff attempts to draw between the

duties of the administration and hers as a teacher, all of her speech is

necessarily founded in her role as an educator.[3] See, e.g., D'Angelo v. Sch. Bd.

of Polk Cnty. Fla., 497 F.3d 1203 (11th Cir. 2007) (principal who worked on

his own initiative to convert his high school into a charter school did not speak

as a citizen despite charter conversion not being an assigned duty); Battle v. Bd.

---

[3] Plaintiff's reliance on the list of duties from the GTDRI also presents problems for her argument. The GTDRI includes: "[e]nforc[ing] regulations concerning student conduct and discipline;" "[c]onduct[ing] assigned classes;" "[i]mplement[ing] designated curriculum;" "assum[ing] responsibility for the total school program;" and "[m]aintain[ing] lesson plans as required by school policy." ([22] n.1.). These duties seem to implicate such matters as student discipline, the teaching curriculum, and the handling of lesson plans, all matters about which she complained to supervisors.

10

of Regents for the State of Ga., 468 F.3d 755 (11th Cir. 2006) (employee in school financial aid office spoke as an employee on a matter of personal interest when expressing concerns about fraud to her supervisors despite arguing she had no duty to discover fraud). None of Plaintiff's statements can be separated from her job-related functions.  See also Gadjiev v. Atlanta Indep. Sch. System, 1:12-cv-2700-JEC, 2013 WL 5349854 (N.D. Ga. Sept. 23, 2013) (school teacher's complaints to supervisors about overcrowded classrooms, inadequate responses to disciplinary issues, and inadequate support to students with disabilities were all personal and work-related grievances). Therefore, Plaintiff's amended allegations are futile for failing to state a claim upon which relief can be granted.

> II.     14th Amendment Due Process Claims (Counts Two and Three)

Plaintiff asserts both procedural and substantive due process claims against Defendants. Plaintiff's substantive due process claims are futile because such claims are based on Plaintiff's theory that she was denied a substantive right to continued employment. ([22-1] at 81.) Plaintiff relies on Hearn v. Gainesville, 688 F.2d 1328 (11th Cir. 1982), which held that a pretextual termination of a state employee amounted to a substantive due process

11

violation. ([22] at 13.) <u>Hearn</u>, however, was overruled by <u>McKinney v. Pate</u>, 20 F.3d 1550, 1560 (11th Cir. 1994), which found that because employment rights are "state-created rights and are not fundamental rights created by the Constitution, they do not enjoy substantive due process protection." Therefore, Plaintiff can only bring claims related to procedural deprivations. <u>Id.</u>

To state a claim for deprivations of procedural due process, Plaintiff must show "the state refuse[d] to provide a process sufficient to remedy the procedural deprivation." <u>Mason v. Clayton Cnty. Bd. of Ed.</u>, 334 F. App'x 191, 193 (11th Cir. 2009) (quoting <u>Cotton v. Jackson</u>, 216 F.3d 1328, 1330-31 (11th Cir. 2000)). The state procedure need not provide all the relief available under § 1983 but must be able to "correct whatever deficiencies exist and . . . provide plaintiff with whatever process is due." <u>Cotton</u>, 216 F.3d at 1331.

Plaintiff alleges that her termination was procedurally defective because she was not provided adequate notice of the Quality Basic Education Act and the protections it affords; she received inadequate notice of the charges brought against her; and the Board members at her termination hearing did not consider her written rebuttals to the charges. Plaintiff also alleges that the members presiding over her termination hearing were "inept" to review her claims

AO 72A
(Rev.8/82)

because of their "unfamiliarity with the law regarding evaluations." ([22] at 14.)

Moreover, Plaintiff alleges that Georgia's Fair Dismissal Act, the law governing

the termination of tenured teachers, violates due process because it does not

provide a means of objecting to infractions prior to those infractions "forming

the basis of violations within the annual observation." ([22] 14-16.)

    First, Plaintiff's allegations regarding the unconstitutional nature of

certain aspects of Georgia's Fair Dismissal Act are futile. In Holley v. Seminole

County School District, 755 F.2d 1492, 1497 (11th. Cir. 1985), the Eleventh

Circuit determined that the Fair Dismissal Act was not facially unconstitutional

because the Act "not only meets, but exceeds the due process standard."  Next,

the Court also finds that Plaintiff's claims alleging inadequacies in state

procedures before and during her termination hearing are futile. Because it is

"the state's failure to provide adequate procedures to remedy the otherwise

procedurally flawed deprivation of a protected interest" that gives rise to a

procedural due process claim, Cotton, 216 F.3d at 1331, the existence of the

procedures discussed below is fatal to Plaintiff's claims.

    For instance, Plaintiff was still entitled to appeal her termination to a

superior court per O.C.G.A. § 20-2-1160, and in the event of an adverse ruling

Plaintiff could have appealed to the state appellate court. Moreover, the state courts are able to review claims related to inadequate notice and other alleged procedural deprivations. See, e.g., King v. Worth Cnty. Bd. of Ed., 749 S.E.2d 791 (Ga. Ct. App. 2013) (rejecting plaintiff's claims that he was given insufficient notice of the grounds for non-renewal and that the school board's decision to terminate him was based on inadmissible evidence). Further, Plaintiff could have pursued equitable relief, reinstatement, or a writ of mandamus compelling the board to follow proper procedure. See, e.g., Cotton, 216 F.3d 1328 (writ of mandamus was available to a non-renewed teacher when no other legal remedy exists and was adequate to ensure teacher was not deprived of procedural due process); Atlanta Pub. Sch. v. Diamond, 583 S.E.2d 500 (Ga. Ct. App. 2003) (affirming lower court order compelling school system to provide non-renewed, tenured teacher with an employment contract). In keeping with the standard set forth above that the state procedure need not provide all the relief available under §1983 but must be able to correct whatever deficiencies exist, the Court finds that Plaintiff's claims are futile because the

14

state does provide her process to remedy the alleged procedural deficiencies.[4]

### III.   Failure to Adequately Train and Supervise (Count Four)

In order to bring this cause of action under § 1983, Plaintiff must plead sufficient facts to show that: "(1) [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted). The Supreme Court has recognized causes of action for failure to train and/or supervise, Canton v. Harris, 489 U.S. 378 (1989), but such claims require a showing that a failure to train in a certain respect was so inadequate as to constitute a custom or policy of "deliberate indifference" to Plaintiff's constitutional rights. Id. at 389 (internal citations and quotations omitted). Because the Court has already determined that Plaintiff has not

---

[4] Defendants argue that Plaintiff's failure to exhaust her available state remedies is "dispositive of her procedural due process claim" ([26] at 8) and cite McKinney in support, which held that "the presence of a satisfactory state remedy mandates that we find no procedural due process violations occurred." 20 F.3d at 1564. The Eleventh Circuit has made clear however that the rule in McKinney is not based on exhaustion principles. Horton v. Bd. of Cnty. Com'rs, 202 F.3d 1297, 1300 (11th Cir. 2000); see also McKinney, 20 F.3d at 1564 n.20 ("McKinney's case fails . . . not for want of exhaustion; indeed, exhaustion is irrelevant to our decision"). Plaintiff's claims are futile because adequate process exists, *not* because she failed to exhaust that process.

adequately alleged any constitutional violations, Plaintiff's claim against Defendants for failure to train and supervise is futile. Moreover, Plaintiff's Amended Complaint fails to plead sufficient facts to support her claim that the "DeKalb County School System failed to train, failed to supervise, and failed to monitor its administrators, teachers and employees." ([22-1] at 84.) Rather, Plaintiff pleads only conclusory statements "couched as factual allegations." Twombly, 550 U.S. at 555.

IV.     *ADA and Rehabilitation Act Claims (Counts Five and Six)*

a.     *ADA Claim (Count Five)*

Plaintiff seeks to assert claims arising under the ADA, 42 U.S.C. § 12101 *et. seq.*, and the Rehabilitation Act, 29 U.S.C. §794(a),  for "discrimination against her in the terms and conditions of her employment, as well as termination," as a result of her "status as a disabled person and her association with disabled students." ([22] at 17.) Defendants state however that "Plaintiff's attempt to add an ADA claim . . . fails at the outset because the

statute of limitations for such a claim has already run." ([26] at 11.) The Court agrees.

16

Congress has established that a plaintiff must bring her ADA claims within ninety days of receiving her right-to-sue letter. Miller v. Georgia, 223 F. App'x 842, 844 (11th Cir. 2007) (citing 42 U.S.C. §§ 2000(e)-5(f)(1)). Plaintiff references her right-to-sue letter in her Amended Complaint ([22-1] ¶ 198) and Defendants have attached a copy of the letter, which is dated March 10, 2011. (Ex. H, Dkt. [26-9].) Plaintiff did not move to add her ADA claims until May 13, 2014, nearly three years after the statute of limitations expired.  As a result, Plaintiff's ADA claim is futile.

> b.    *Rehabilitation Act Claim (Count Six)*

Finally, Plaintiff alleges that "[s]olely by reason of her disability and her association with children who were disabled[,] . . . plaintiff was discriminated against . . . in the conditions of employment [and] discipline and [was] wrongfully terminated." ([22-1] at 87-88.) The Court first notes that in paragraph 204 of the Count, Plaintiff "restates paragraph[s] 1-203 as if fully copied [therein]." Count Six represents an impermissible shotgun pleading which fails to tie any factual allegations to the cause of action.[5] Shotgun

---

[5] Such a pleading typically "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." Osahar v. U.S.

pleading has been repeatedly condemned by the Eleventh Circuit as a "massive waste of judicial and private resources" which "impedes the administration of district courts." PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010). Moreover, Plaintiff has failed to reply to Defendants' argument that her "bare assertions of disability discrimination . . . are conclusional [sic] statements that do not satisfy" Rule 8's pleading standards. ([26] at 14.) The Court therefore agrees that Plaintiff's Rehabilitation Act claim is futile because Plaintiff has not provided more than conclusory statements regarding her disability and her association with students with disabilities. Further, Plaintiff's allegations are so ambiguous that the Court cannot determine which factual allegations pertain to the Rehabilitation Act. For these reasons, Plaintiff's claim under the Rehabilitation Act is futile.

Having found each of the claims in Plaintiff's proposed Amended Complaint to be futile, Plaintiff's Motion for Leave to File Amended Complaint [22] is **DENIED.** The Court turns now to consider Defendants' Motion to Dismiss [17] Plaintiff's original Complaint [3].

## II.    Motion to Dismiss

Postal Service, 297 F. App'x 863, 864 (11th Cir. 2008).

A.      Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  <u>Id.</u>

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 556 U.S. at 678).  "Threadbare recitals of the

19

elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R. Civ. P. 12(d).  However, documents attached to a complaint are considered part of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "'Undisputed' means that the authenticity of the document is not challenged." Id.

B.    Analysis

20

Defendants' Motion to Dismiss [17] is essentially unopposed. Plaintiff apparently offered her Memorandum in support of her Motion to Amend [22] as a response to Defendants' Motion [17]. She states, "The plaintiff has of this date not responded to the Motion to Dismiss. . . . Commensurate with the filing of the Motion to Amend, the plaintiff files the Response and Memorandum [t]o the Motion to Dismiss." ([22] at 2.) However, Plaintiff filed no document other than her Memorandum in support of her Motion to Amend at that time. The Court has considered her arguments, where relevant, in connection with the Motion to Dismiss.

For the same reasons that the Court found Plaintiff's First Amendment retaliation claim in the proposed Amended Complaint to be futile, Plaintiff's claim in her original complaint for First Amendment retaliation fails to state a claim upon which relief can be granted. In her proposed Amended Complaint, Plaintiff abandoned her claims relating to § 1985 conspiracy, Title VII age discrimination, and state law fraud.  She did not address any of these claims in her Memorandum [22]. Thus, the Court concludes that Defendants' motion is unopposed as to these claims. However, an unopposed motion does not mean that the moving party automatically prevails; rather, the Court is still required to

consider the merits of the motion. See <u>Dunlap v. Transamerica Occidental Life Ins. Co.</u>, 858 F.2d 629, 632 (11th Cir.1988) (in an unopposed motion for summary judgment, the district court must "indicate that the merits of the motion were addressed"); <u>Simpson v. Countrywide Home Loans</u>, 2010 WL 3190693, at *3 (N.D.Ga. Apr.26, 2010) (holding that "unopposed" under Northern District of Georgia Local Rule 7.1(B) does not mean the non-responsive party "abandoned" its claims in the motion to dismiss context). Therefore, the Court will consider the merits of Defendant's Motion to Dismiss as to these claims.

Plaintiff's § 1985 conspiracy claim, Title VII age discrimination claim, and state law fraud claim all fail because Plaintiff failed to adequately plead facts in support of the claims. Also, because the alleged conspiracy is among the School District and employees of the School District, the § 1985 conspiracy claim is barred by the intracorporate conspiracy doctrine. <u>Humphrey v. Napolitano</u>, 517 Fed. Appx. 705, 709 (11th Cir. 2013).

Therefore, the Court concludes that all of the claims asserted in the original Complaint [3] are due to be **DISMISSED**.

22

## Conclusion

Based on the foregoing, Plaintiff's Motion for Leave to Amend [22] is **DENIED** and Defendants' Motion to Dismiss [17] is **GRANTED**. Judgment shall be entered in favor of Defendants, and the Clerk shall close the case.

**SO ORDERED**, this  18th  day of July, 2014.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)